UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PABLO CASTELLANOS-HERNANDEZ   :      CASE NO.  3:22 CV 00728 (OAW)
                        :
v.                            :
                        :
SUBURBAN SUBARU, INC.        :
                        :      OCTOBER 6, 2022

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS

The allegations of Plaintiff's Amended Complaint, despite amendment, remain deficient, and fail to state several claims upon which relief can be granted. Defendant Suburban Subaru, Inc. ("Defendant" or "Suburban Subaru") therefore submits this Memorandum of Law in support of its Renewed Motion to Dismiss the First, Second, Third, Fourth, Fifth and Sixth Counts of the Amended Complaint, filed September 22, 2022, which assert violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, the Retail Installment Sales Financing Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.*, the Uniform Commercial Code ("UCC"), the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    BACKGROUND

This is a dispute concerning Plaintiff's purchase and financing of a motor vehicle from Defendant. Plaintiff alleges that on or about October 19, 2021, he went to Suburban Subaru to look at vehicles, and that he agreed to purchase a 2020 Subaru Legacy (the "Vehicle") for a cash price of $34,317.44. *See* Amended Complaint, ECF No. 22 ("Am. Compl.") ¶¶ 15, 20. Plaintiff

alleges that he paid a cash down payment of $3,750 and traded in a 2011 Subaru Legacy and received a trade-in allowance of $1,000. *Id.* ¶ 21. Plaintiff financed the balance of $29,567.44 pursuant to a retail installment contract which he calls the "First Contract." *Id.* ¶ 22.

After he took delivery of the Vehicle, Plaintiff claims that Suburban Subaru contacted him and requested additional information regarding his credit application, which he provided. *Id.* ¶ 26. Plaintiff asserts that Suburban Subaru then called him several weeks later and told him that his credit application had not been approved by "COAF"[1] and that if he wanted to retain the Vehicle, that he would have to submit a new credit application with his wife as co-signer. *Id.* ¶ 30. Suburban Subaru told Plaintiff that his wife needed to co-sign because she was a joint account holder on Plaintiff's bank account. *Id.* ¶ 31. Plaintiff claims that Suburban Subaru refused to accept his payments under the First Contract, that he and his wife subsequently submitted a joint credit application. *Id.* ¶¶ 32-33. Plaintiff believes that Suburban Subaru then submitted his credit application to "COAF" and Santander Consumer, USA, which caused his credit score to drop by ninety (90) points. *Id.* ¶¶ 34, 37. Plaintiff claims that Suburban Subaru informed him his new application was approved, and that he needed to pay an additional $1,000 as a down payment. *Id.* ¶ 38.

Plaintiff alleges that a second retail installment contract was then prepared by Suburban Subaru with him and his wife as "Co-Buyer" and that he was told if he did not agree to purchase a "GAP Addendum" that the credit application would not be approved, or result in a higher annual percentage rate of interest. Am. Compl. ¶¶ 39-42. Plaintiff claims even though he asked for the "GAP Addendum" to be removed, he executed the second retail installment contract, despite not wanting to purchase the "GAP Addendum" (which he states he later canceled), and

---

[1] The Amended Complaint does not define "COAF" but for purposes of this motion, Defendant understands it to refer to an institution that provides auto financing.

that the contract was then assigned by Suburban Subaru to "COAF." *Id.* ¶44.

On the basis of these allegations, Plaintiff brings amended claims asserting violation of ECOA, RISFA, the UCC, TILA, and CUTPA. Defects noted in the Defendant's initial Motion to Dismiss have not been cured despite the Plaintiff's filing of an Amended Complaint. For the following reasons, all of these claims must be dismissed.

## II.   <u>ARGUMENT</u>

### A.  Standard of Review for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to challenge a plaintiff's failure to state a claim upon which relief can be granted.  This rule "delineates the procedures which must be followed in testing the legal sufficiency of a complaint." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991).  Although the Court is obligated to accept the allegations of the complaint as pleaded, *Allen v. WestPoint-Pepperelle, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991), "[i]n order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level…The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  While "[u]nder Rule 12(b)(6) the well-pleaded material allegations of the complaint are taken as admitted[,]…unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2nd Cir. 1994). Similarly, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management, Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B. Plaintiff's First Count Alleging Violation of the ECOA Fails to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.**

The ECOA provides: "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis of … marital status … [.]" 15 U.S.C. § 1691(a)(1). The law also provides that in the event of an adverse action, such as denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested, the credit applicant is entitled to a statement of reasons for such adverse action. *Id.* at § 1691(d)(6). A creditor satisfies this requirement by providing notice in writing to applicants, or by verbal statements or notifications by creditors who did not act on more than one hundred and fifty applications during the calendar year preceding the adverse action. *Id*. at § 1691(d)(2),(5). Separately, a creditor must notify an applicant of its action on an application for credit within thirty days of receipt of a completed application for credit. *Id.* at § 1691(d)(1). The ECOA's accompanying regulation, 12 CFR Part 1002, known as "Regulation B" issued by the Bureau of Consumer Financial Protection, further clarifies that in the event of an incomplete application, "a creditor may inform the applicant orally of the need for additional information." *See* 12 CFR § 1002.9(c)(3). It also states that a "creditor shall not refuse to grant an individual account to a *creditworthy* applicant on the basis of … marital status[.]" (emphasis added.) 12 CFR § 1002.7(a).

"The purpose of the ECOA is to prohibit a creditor from requiring the signature of an applicant's spouse if the applicant individually qualifies under the lender's standards for creditworthiness." *Riggs Nat. Bank of Washington, D.C. v. Linch*, 829 F. Supp. 163, 168 (E.D. Va. 1993). More specifically, the ECOA was implemented to prevent the "discriminatory

practice of forcing women to have their husbands guarantee any loan they wished to receive." *Id.*; *see also Miller v. American EXPCO*, 688 F.2d 1235, 1239 (9th Cir. 1982) (the ECOA was meant to protect women, among others, from arbitral denial or termination of credit); *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982) (ECOA's purpose is to eradicate credit discrimination wages against women, especially married women).

Through conclusory allegations, Plaintiff alleges that Suburban Subaru violated the ECOA "by discriminating against Plaintiff on account of his marital status by asking Plaintiff for his spouse's credit information and by requiring that his spouse, to the exclusion of other potential co-signers, be a co-buyer for the Vehicle." Am. Compl., First Count at ¶ 48. Plaintiff also alleges that Suburban Subaru violated the ECOA "by not providing Plaintiff with a written notice of the adverse action that it took by denying his application to purchase the Vehicle without his spouse as a co-signer, or by revoking the credit that it previously extended under the First Contract and for not sending written notice of the adverse action as required by 15 U.S.C. § 1691(d)(2)." Am. Compl., First Count at ¶ 49.

Plaintiff's assertions fail to state a claim as a matter of law and are contrary to his own recitation of the facts. As an initial matter, 15 U.S.C. § 1691d, provides that:

> (a) Requests for signature of husband and wife for creation of valid lien, etc.
>
> A request for the signature of both parties to a marriage for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings, shall not constitute discrimination under this subchapter: Provided, however, That this provision shall not be construed to permit a creditor to take sex or marital status into account in connection with the evaluation of creditworthiness of any applicant.

There are no facts pled to even suggest that Suburban Subaru discriminated against Plaintiff on the basis of his purported marital status whatsoever. According to the Complaint, Plaintiff executed a retail installment contract with Suburban Subaru, in which he financed a sum of

$29,597.44 and took delivery of the Vehicle. Am. Compl., First Count ¶¶ 22-26. Suburban Subaru is also alleged to have requested "additional information" regarding his credit application, which Plaintiff provided. *Id*. at ¶ 26. It was not until *after* the assignee, "COAF", is alleged to have declined to accept assignment of the retail installment contract, that Plaintiff was supposedly told that his credit application was not accepted. Am. Compl., First Count ¶¶ 28, 30.

These facts render Plaintiff's ECOA claim deficient as a matter of law and are identical to those in *Riggs Nat. Bank of Washington, D.C. v. Linch*, a case where the court ruled that an alleged creditor could not violate the ECOA where it did not require the signature of an applicant's spouse on a guaranty for a loan until *after* it determined that the applicant was not independently creditworthy for the loan. *See Riggs Nat. Bank*, 829 F. Supp. at 169. The applicant in *Riggs* applied for a loan from a bank and submitted with his application a financial statement which showed property partially and jointly owned by others, including his wife. Since the applicant did not own the assets he proffered as support for his guarantee of the loan, he was determined to no longer satisfy the bank's standard for creditworthiness. *Id*. at 167. The bank then requested execution of a guaranty by all owners of the property. It was only *after* the bank determined that the applicant was not independently creditworthy for the loan that his wife, part owner of the property listed on the applicant's financial statement, was required to sign the guaranty. *Id.* at 168-69.

Thus, as in *Riggs*, there was some determination made as to Plaintiff's credit application, but it was made *after* Plaintiff accepted and took delivery of the Vehicle, not before. *See* Am. Compl., First Count ¶¶ 30, 31 ("Notably, Suburban Subaru did not state that Plaintiff could secure any co-signer but specified that the co-signer needed to be his spouse on the purported grounds that *she was a joint account holder* on Plaintiff's bank account."). Even with the

6

Plaintiff's characterization that it is somehow unreasonable to have all owners of the property as guarantors of the loan, it does not change the fact that the allegation is fatal to Plaintiff's claims. It is an admission that the reason why Suburban Subaru required Plaintiff's wife to cosign was not based on his purported marital status, but rather because his credit was unsound, and his wife was needed as a co-signer in order to be eligible for the credit to be extended.

Relatedly, the Amended Complaint also fails to allege that Plaintiff was a *creditworthy* applicant. Regulation B, 12 CFR § 1002.7(a) provides that creditors cannot refuse to grant creditworthy applicants an individual account on the basis of their marital status. The facts of the Amended Complaint demonstrate that Suburban Subaru was willing to enter into a financed transaction with Plaintiff, irrespective of his marital status, but still dependent upon a determination of his creditworthiness and/or the fullness of his application. Even accepting as true the facts alleged in the Amended Complaint, there can be no ECOA violation.

Finally, the Plaintiff fails to allege that Suburban Subaru violated the ECOA by failing to provide notification of an adverse action directly. "Although a creditor 'may inform the applicant orally of the need for additional information,' 'if the application remains incomplete, the creditor shall send' written notice of the incompleteness or denial." Gunter v. Long Island Power Auth./Keyspan, No. 08–CV–498, 2012 WL 4057410, at *4 (E.D.N.Y. Aug. 8, 2012) (quoting 12 C.F.R. § 202.9(c)(3)). An applicant is entitled to written notification from a "creditor" of an adverse action and a statement of the reasons for such action. 15 U.S.C. § 1691. Specifically, 15 U.S.C. §1691 (d)(4) states:

> Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

As a threshold matter, the only "adverse action" alleged on the part of Suburban Subaru is that it

relayed the assignee's refusal to provide financing. Am. Compl., First Count ¶¶ 28, 30. Plaintiff also alleged that the identity of the Creditor "COAF" was disclosed. *Id*. ¶¶ 25, 27, 30. However, the Plaintiff does not allege that "COAF" did not provide a notice directly. The statute does not require Suburban Subaru to give the written notification, but either Suburban Subaru *or* COAF. In order to state a cause of action, the Plaintiff must allege the injury of not receiving written notification from either source. They did not do so.

For these reasons, Defendant respectfully requests the Court dismiss the First Count.

### C. Plaintiff's Second Count Alleging Violation of the RISFA Fails to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.

The Second Count fails to state a cognizable claim under the RISFA for three reasons: (1) it fails to allege a repossession within the meaning of the RISFA; (2) it fails to allege a violation of RISFA's notice requirements; and (3) fails to allege a violation of Plaintiff's redemption rights under the RISFA.

"Although consumer legislation must be interpreted so as to implement its remedial purpose of protection for consumer buyers … even such legislation cannot transcend its statutorily defined ambit." *Gaynor v. Union Trust Co.*, 216 Conn. 458, 466 (1990). "The meaning to be given a statute is determined by legislative intent and that legislative intent must be determined by language actually used in the legislation." (internal citation and quotation marks omitted.) *Id.*

While the RISFA does not define a repossession, it clearly contemplates the physical possession, taking and retention of an article of goods, as it expressly provides the manner in which a retail seller may repossess an article of goods, such as a motor vehicle:

> When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any

promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof.

Conn. Gen. Stat. § 36a-785(a). Relatedly, Conn. Gen. Stat. § 36a-785(b) provides that the holder of a retail installment sales finance contract *may* serve upon the retail buyer a notice of intention to retake the goods on account of the buyer's default. "Although notice is not a mandatory requirement, if the holder elects to send notice, it must be served '[n]ot less than ten days prior to the retaking' of the goods, in this case the Vehicle." *O'Neill v. Country Motors, II, Inc.*, No. 3:15-CV-1069 (CSH), 2015 WL 8779594, at *13 (D. Conn. Dec. 15, 2015). If the contract holder fails to provide the retail buyer with at least ten days' notice before the date set for retaking, Conn. Gen. Stat. § 36a-785(c), which provides the buyers' redemption rights, applies. *Hunter v. American Honda Finance Corp.*, No. CV99 0587409, 2000 WL 422195, at *1-2 (Conn. Super. April 4, 2000, Rittenbrand, J.). Conn. Gen. Stat. § 36a-785(c) states:

> (c) *Redemption.* If the holder of such contract does not give the notice of intention to retake, described in subsection (b), he shall retain such goods for fifteen days after the retaking within the state in which they were located when retaken. During such period the retail buyer, upon payment or tender of the unaccelerated amount due under such contract at the time of the retaking and interest, or upon performance or tender of performance of such other condition as may be named in such contract as precedent to the retail buyer's continued possession of such goods, or upon performance or tender of performance of any other promise for the breach of which such goods were retaken, and upon payment of the actual and reasonable expenses of any retaking and storing, may redeem such goods and become entitled to take possession of the same and to continue in the performance of such contract as if no default had occurred. The holder of such contract shall within three days of the retaking furnish or mail, by registered or certified mail, to the last known address of the buyer a written statement of the unaccelerated sum due under such contract and the actual and reasonable expense of any retaking and storing. For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage, and also shall be liable for the actual damages suffered because of such failure. If such goods are perishable so that retention for fifteen days as herein prescribed would result in their destruction or substantial injury, the provisions of this subsection shall not apply and the holder of the contract may resell the goods immediately upon such retaking.

A repossession within the meaning of the RISFA clearly contemplates the physical

possession, taking and retention of an article of goods. A full reading of the RISFA makes this clear, such as Conn. Gen. Stat. § 36a-785(h) which states "[a]fter the holder retakes possession as provided in subsection (a) of this section", which thereby intimates that actual physical possession by the retail seller constitutes repossession under the RISFA. *See also* Conn. Gen. Stat. §§ 36a-785(c)-(k). The RISFA's rules regarding notice and redemption would be rendered superfluous if the RISFA contemplated repossession to mean what Plaintiff asserts it does: "the requirement that Plaintiff execute a new contract as a condition of keeping the Vehicle." Am. Compl., Second Count, ¶ 51.

As noted *infra* with respect to Counts Three (regarding the UCC and repossession) and Six (regarding a CUTPA violation with respect to repossession), the Amended Complaint does not allege any facts to even suggest that a physical retaking of the Vehicle ever occurred, or that once "Plaintiff took delivery of the Vehicle" (*id.* ¶ 26) that the Vehicle ever returned to Suburban Subaru's possession. At most, Plaintiff alleges that "Suburban Subaru called Plaintiff and told him … that if he wanted to retain the Vehicle, he would be required to submit a new credit application[.]" *Id.* ¶ 30. This does not constitute a repossession within the meaning of the RISFA. If this constituted a repossession, then the redemption rights of Conn. Gen. Stat. § 36a-785(c) would be unnecessary, because there would be no need for the law to require a holder to "retain such goods for fifteen days after the retaking within the state in which such goods were located when retaken." For example, Suburban Subaru is not alleged to have retaken the Vehicle and could not have "retained" if it was never repossessed. Plaintiff's conclusion that Suburban Subaru's actions constitute a repossession within the meaning of the RISFA was absurd when it was alleged in the Complaint. *See* Complaint, ECF No. 1 ¶ 54. Indeed, the Plaintiff's Amended Complaint acknowledges that no repossession occurred; instead, the Plaintiff alleges that this is a

"constructive repossession" for the purposes of RISFA, a concept that RISFA does not contemplate. *Id.* ¶ 51. But the mere notification that the Plaintiff did not secure financing did not interfere with the Plaintiff's use or possession. Even as re-plead as "constructive repossession," the Plaintiff cannot allege any facts that allege a repossession for the purposes of RISFA.

Further, the Second Count fails to allege a violation of the RISFA's notice requirements. The Second Count cites Conn. Gen. Stat. § 36a-785(c) as the basis for the notice violation, but Conn. Gen. Stat. § 36a-785(c) concerns redemption rights for when a good has been repossessed, and notice once that has occurred, but does not require notice when repossession has yet to occur. *Hunter*, 2000 WL 422195, at *1-2. The only notice that is required by Conn. Gen. Stat. § 36-785(c) is notice "after the date of retaking." Since a retaking did not occur, Conn. Gen. Stat. § 36a-785(c)'s notice requirement was never triggered.

Moreover, Plaintiff cited the incorrect provision of the RISFA even after Amendment. It is Conn. Gen. Stat. § 36-785(b), captioned "Notice of intention to repossess" which provides general notice requirements under the RISFA, not Conn. Gen. Stat. § 36a-785(c). Am. Compl., Second Count, ¶ 52.

Relatedly, there is no basis for Plaintiff to claim as damages for a violation of the RISFA "statutory damages of 25% of the amount paid under the First Contract, or $1,187 pursuant to Conn. Gen. Stat. § 36a-785(i)." Am. Compl., Second Count, ¶ 53. No provision of the RISFA provides, contemplates, or authorizes relief for these allegations. The subsection cited, Conn. Gen. Stat. § 36a-785(i), provides:

> **Recovery of part payments.** If the holder of the contract fails to comply with the provisions of subsections (c), (d), (e), (f), (g) and (h) of this section, after retaking the goods, the retail buyer may recover from the holder of the contract such retail buyer's actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract."

11

Subsection (b), the notice requirement, is notably absent.

For these reasons, the Second Count should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff's Third Count Alleging Violation of the UCC Fails to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.

The Third Count fails to state a claim for relief and should be dismissed for failing to plead facts sufficient to determine the applicability of the UCC.

"The UCC is adopted as law separately by the states, it is not a federal law[.]" *Kemp v. United States*, 124 Fed. Cl. 387, 393 (2015). *See also Onwuka v. Citibank, NA*, No. 20-CV-6064 (LLS), 2020 WL 7321397, at *2 n.1 (S.D.N.Y. Dec. 3, 2020) ("The UCC is not a federal law but rather a set of laws governing commercial transactions in the United States that have been adopted separately by the states.")

The UCC allows a secured party to "take possession of the collateral" following default and allows a debtor to recover if the secured party does not proceed in accordance with the statute. Conn. Gen. Stat. §§ 42a-9-609, 42a-9-625. The Third Count alleges "Suburban Subaru violated the UCC by repossessing the Vehicle when Plaintiff was not in default and when it had no right to do so in violation of Conn. Gen. Stat. § 42a-9-609." Am. Compl., Third Count, ¶ 55. It further alleges that:

> 56. Pursuant to Conn. Gen. Stat. § 42a-9-625, Suburban Subaru is liable to Plaintiff for the greater of his actual damages or an amount equal to the finance charge plus ten percent of the principal amount of the amount financed as shown on the First Contract, or $20,812.
> *Id.* ¶ 56.

The Third Count fails to state a claim for relief, like the Second Count, where the Plaintiff does not allege that Suburban Subaru took the vehicle. The allegation of repossession, which is also alleged in Count Two and Six, is based on the premise that Suburban Subaru

threatened to reclaim the vehicle which at that point belonged to the Plaintiff. There are no facts to support this conclusion. The Plaintiff had absolutely no entitlement to the Vehicle because the financer refused to extend credit to the Plaintiff – distinguishable from a situation where a buyer owns the vehicle, albeit subject to a lien by the financer. The allegations of the Amended Complaint make clear that the financing was meant to be provided by "COAF," and that because his spouse was a joint account holder on the bank account he provided as collateral, financing was declined for him alone. *Id.* ¶¶ 25, 28, 31. The Plaintiff was not independently creditworthy, and did not obtain financing and thus purchase the vehicle, and therefore was not entitled to it when the Plaintiff alleges repossession occurred. Counts Two and Six should be stricken on this ground for the same reasoning.

With respect to the reference to Conn. Gen. Stat. § 42a-9-625, the Complaint fails to plead any facts as to its applicability. Conn. Gen. Stat. § 42-9-625 provides remedies for a secured party's failure to comply with a provision of Conn. Gen. Stat. § 42a-9-601 *et seq*. Further, the Complaint also fails to allege Suburban Subaru is a secured party as defined by Conn. Gen. Stat. § 42a-9-102, such that the relief sought would even be available to him.[2]

For these reasons, the Third Count should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E.  Plaintiff's Fourth Count Alleging Violation of TILA Fail to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.

---

[2] *See* Conn. Gen. Stat. § 42a-9-102(73): "Secured party" means:
(A) A person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding;
(B) A person that holds an agricultural lien;
(C) A consignor;
(D) A person to which accounts, chattel paper, payment intangibles or promissory notes have been sold;
(E) A trustee, indenture trustee, agent, collateral agent or other representative in whose favor a security interest or agricultural lien is created or provided for; or
(F) A person that holds a security interest arising under section 42a-2-401, section 42a-2-505, subsection (3) of section 42a-2-711, subsection (d) of section 42a-2A-724, section 42a-4-210 or section 42a-5-118.

TILA was enacted to "protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms." *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016). TILA requires disclosures of specific details of a transaction that accurately reflect the terms of the legal obligations between the parties and provided before consummation of the transaction. 12 C.F.R. § 1026.17(c). With respect to disclosures which are estimates, TILA's accompanying regulations, known as Regulation Z, provide in part that:

> If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.

*See* 12 C.F.R. § 1026.17(c)(2). According to the official interpretation of the Bureau of Consumer Financial Protection, which implements Regulation Z:

> [D]isclosures may be estimated when the exact information is unknown at the time disclosures are made. Information is unknown if it is not reasonably available to the creditor at the time the disclosures are made. The 'reasonably available' standard requires that the creditor, acting in good faith, exercise due diligence in obtaining information. For example, the creditor must at a minimum utilize generally accepted calculation tools, but need not invest in the most sophisticated computer program to make a particular type of calculation. The creditor normally may rely on the representations of other parties in obtaining information. For example, the creditor might look to the consumer for the time of consummation, to insurance companies for the cost of insurance, or to realtors for taxes and escrow fees. The creditor may utilize estimates in making disclosures even though the creditor knows that more precise information will be available by the point of consummation.[3]

The Fourth Count is premised on Plaintiff's assertion of a First Contract. It alleges that when Suburban Subaru entered into the First Contract with Plaintiff, "it knew or should have known that it did not have a firm commitment from COAF." Am. Compl., Fourth Count ¶ 57.

---

[3] See Bureau of Consumer Financial Protection, Official Interpretation of § 1026.17 ("Official Commentary") (available at https://www.consumerfinance.gov/rules-policy/regulations/1026/17/#17-c-Interp) (last accessed August 17, 2022).

The Amended Complaint continues as follows:

> 58.  The proffered Annual Percentage Rate ("APR") was an estimate, and it was treated by Suburban Subaru as an estimate, regarding the terms of the credit that it might provide to Plaintiff, because the date that the credit would actually be extended as delineated by the transfer of title to Plaintiff, was unknown at the time that Suburban Subaru provided the disclosures in the first transaction.
>
> 59.  Through its failure to disclose the APR as an estimate on the First Contract, Suburban Subaru violated TILA by way of Regulation Z § 226.17(c)(2).

*Id.* ¶¶ 58-59.

These allegations do not state a cognizable claim of violation of TILA or Regulation Z. The Official Commentary makes it clear that Regulation Z, 12 C.F.R. § 226.17(c)'s rule on estimates concerns not whether an extension of credit will be honored if it cannot be assigned, but instead concerns the actual *calculation* of the disclosures made to the consumer for the purpose of providing an accurate disclosure of financial terms. *See* Official Commentary ("For example, the creditor must at a minimum utilize generally accepted calculation tools, but need not invest in the most sophisticated computer program to make a particular type of calculation."). Plaintiff's conclusion that Suburban Subaru's bare inclusion of an estimated APR, without any allegation that the APR was incorrectly calculated based on the information Suburban Subaru had at the time, as a violation of TILA does not state a claim upon which relief can be granted.

For this reason, the Fourth Count should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### F.  Plaintiff's Fifth Count Alleging Violation of TILA Fail to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.

The Fifth Count is primarily based in allegations regarding Suburban Subaru's recommendation that GAP insurance coverage be included after the Plaintiff was denied financing. The Fifth Count alleges:

61. By telling Plaintiff he would be required to pay a higher APR if he did not purchase the GAP addendum or that he might not be approved for financing, Suburban Subaru conditioned the APR on the purchase of the GAP.

62. Consequently, GAP was not optional but was a mandatory condition of the extension of credit at the lower rate of interest.

63. The cost of the GAP was not included as part of the finance charge in the disclosures in the Second Contract but was instead incorporated as part of the amount financed, even though it was ineligible for exclusion from the finance charge under 15 U.S.C. § 1605(b)(1) and Reg. Z. § 1026.4(d)(1)(i).

64. Suburban Subaru violated TILA, 15 U.S.C. § 1638(d) by improperly including the cost of GAP as part of the amount financed and by not including it in the finance charge or in the calculation of the annual percentage rate of interest.

*See* Am. Compl., Fifth Count ¶¶ 61-64.

However, these allegations require the reader to accept as fact that "GAP" insurance coverage was involuntary, despite the allegations to the contrary. The Plaintiff alleged that after he was denied financing by COAF, Suburban Subaru prepared a contract that included a "Gap Addendum." *Id.* ¶ 40. When the Plaintiff asked if it could be removed, he was told that the GAP coverage was included to increase the likelihood that his credit application would be approved, and to reduce the potential annual rate of interest. *Id.* ¶ 42. After considering the risks, Plaintiff then voluntarily accepted the inclusion of a GAP addendum. *Id.* ¶ 43. These allegations do not demonstrate that the insurance was required in order to state a claim under TILA. Instead, the Plaintiff admits that the inclusion of GAP coverage was voluntary, and that no one from Suburban Subaru told him that it was *required*, just that there was a possibility that the interest rate might increase without its inclusion. The Plaintiff has not asserted any factual basis that the Plaintiff was required to purchase GAP coverage, and rather relies on legal conclusions to carry the day.

For this reason, the Fifth Count should be dismissed per Fed. R. Civ. P. 12(b)(6).

**G. Plaintiff's Sixth Count Alleging Violation of CUTPA Fails to State a Claim Upon Which Relief Can Be Granted and Must Be Dismissed.**

Plaintiff's Sixth Count alleging violation of CUTPA fails for several reasons, including: (1) there are no violations of other statutes upon which Plaintiff can base this claim; (2) it cites statutes for which violations do not give rise to liability under CUTPA and/or are inapplicable to the present facts; and (3) it otherwise fails to allege facts to support a CUTPA violation. Suburban Subaru's reasoning is more fully briefed below.

**i.    The Sixth Count Fails to Allege Violations of the ECOA, TILA, RISFA or the UCC.**

As bases for its claim that Suburban Subaru has violated CUTPA, Plaintiff asserts a variety of statutory violations, including violations of the ECOA, TILA, RISFA, and the UCC. *See* Am. Compl., Sixth Count ¶ 68(a). Conclusory references to these statutes however are to no avail.

With respect to the ECOA, for the reasons already briefed in this memorandum, Plaintiff has failed to state a claim upon which relief can be granted. Yet even if this Court were to find that a cognizable claim for violation of the ECOA has been pleaded, the ECOA expressly restricts a plaintiff's election of remedies to recover damages under the ECOA, or under applicable state law, but not both. *See* 15 U.S.C. § 1691d. Thus, to the extent Plaintiff's CUTPA claim is premised on the alleged violation of the ECOA, it is barred and must be dismissed. *See e.g., Dinoto v. Rockland Financial Mortg. Co.*, No. 3:06CV1132 (MRK), 2007 WL 2667318, at *1 (D. Conn. Aug. 21, 2007) ("To the extent that Plaintiffs allege CUTPA claims for the same conduct on which they premise their ECOA … claim[,] the Court notes that the Plaintiffs' CUTPA claims are barred by the ECOA, *see* 15 U.S.C. § 1691d(e)[.]").

The UCC cannot provide a basis for the CUTPA claim because the UCC is not an

independent federal law, but is a set of rules applicable to commercial transactions which are separately adopted by states. *See Onwuka*, 2020 WL 7321397, at \*2 n.1 (collecting cases).

For these reasons, to the extent the Second Count relies on alleged violations of the ECOA, TILA, RISFA, and the UCC as bases for violation of CUTPA, it fails to state a claim upon which relief can be granted and should be dismissed.

### ii. Conn. Gen. Stat. § 14-62(h) and Conn. Agency Reg. § 42-110b-28(b)(23) Are Inapplicable to The Facts Alleged And Do Not Give Rise to Liability Under CUTPA.

As an additional purported basis for his CUTPA claim, Plaintiff's Sixth Count cites Conn. Gen. Stat. § 14-62(h), claiming that Suburban Subaru's "release of the Vehicle to Plaintiff prior to the time that financing had been approved" is a "*per se* violation of CUTPA." Am. Compl., Sixth Count ¶ 68(c). This is not true.

Conn. Gen. Stat. § 14-62(h) provides in relevant part:

> No dealer licensed under section 14-52 shall deliver or permit a retail purchaser to take possession or delivery of any used motor vehicle until such purchaser has paid in full for the vehicle or until financing offered by the dealer for such vehicle has been approved by the lending institution or other entity through which any financing agreement has been made. Any dealer that violates this subsection shall be guilty of a class B misdemeanor.

In no way does a violation of Conn. Gen. Stat. § 14-62(h) constitute a *per se* violation of CUTPA. In its wisdom, the legislature has made other sections of Conn. Gen. § 14-1 *et. seq*, Chapter 246 of the General Statutes governing Motor Vehicles, *per se* unfair trade practices, but not Conn. Gen. Stat. § 14-62(h). When the legislature intends to make a violation of the Motor Vehicles statutes an unfair trade practice, it does so expressly. *See Jacobs v. Healy Ford-Subaru, Inc.*, 231 Conn. 707, 727 (1995) ("To the extent that the referee correctly interpreted the plaintiff's bare allegations of a CUTPA violation as a per se claim, we agree with his rejection of it. When the legislature has intended to make the violation of a consumer statute an automatic

violation of CUTPA, it has done so expressly."). For example, Conn. Gen. Stat. §§ 14-16c(f)[4], 14-106b(d)[5], and 14-106d(d)[6] all expressly make violations of those statutes an unfair trade practice. Thus, the Sixth Count's reference to Conn. Gen. Stat. § 14-62(h) as a basis for a per se violation of CUTPA is incorrect and unavailing. *See also Leaksealers, Inc. v. Connecticut Nat. Bank*, No. CV920517952, 1995 WL 384611, at *10 (Conn. Super. June 20, 1995) (noting that "a violation of a statute does not necessarily give rise to a violation of public policy and, in turn, a violation of CUTPA" and that "a [v]iolation of an identifiable public policy alone may be insufficient under certain circumstances to support a CUTPA violation.").

With respect to the Sixth Count's reference to Conn. Agency Reg. § 42-110b-28(b)(23), this regulation does not even apply to the present set of facts. Conn. Agency Reg. § 42-110b-28(b)(23) is a regulation on specific standards for motor vehicle advertising. Conn. Agency Reg. § 42-110b-28(b), titled "Advertisement of motor vehicles" expressly states "*Scope*: The following *advertising regulations shall apply to any advertisement published, delivered, broadcast or circulated within the State of Connecticut*." Conn. Gen. Reg. § 42-110b-28b(23) goes on to state: "it shall be an unfair or deceptive act or practice for a new car dealer or a used car dealer to violate any provision of a federal or state statute or regulation concerning the sale or lease of motor vehicles." This regulation is inapplicable where the Amended Complaint does not even contain the word "advertising" let alone make reference to any advertisement or misleading

---

[4] Conn. Gen. Stat. § 14-16c(f): "No insurance company and no firm or corporation which is a self-insurer may sell or transfer any totalled or salvaged motor vehicle, major component parts or any other parts of a motor vehicle to any person, firm or corporation which is not licensed under the provisions of subparts (D) or (H) of part III of this chapter. … Any sale or transfer in violation of the provisions of this section shall constitute *an unfair method of competition and an unfair or deceptive act or practice*, as defined by section 42-110."

[5] Conn. Gen. Stat. § 14-106b(d): "Any person violating the provisions of subsections (b) or (c) of this section shall be guilty of committing a class A misdemeanor. ... A violation of the provisions of said subsections shall be deemed to be *an unfair trade practice* within the provisions of chapter 735a."

[6] Conn. Gen. Stat. § 14-106d(d): "A violation of subsection (b) or (c) of this section shall be deemed *an unfair or deceptive trade practice* under subsection (a) of section 42-110b. Each manufacture, importation, installation, reinstallation, sale or offer for sale shall constitute a separate and distinct violation."

advertising.[7] Thus, to the extent the Sixth Count's reference to Conn. Agency Reg. § 42-110b-28b(23) is a basis for a per se violation of CUTPA, it is also incorrect and unavailing.

### iii.    The Sixth Count Fails to Allege Facts To Support a CUTPA Violation.

CUTPA provides that "[n]o person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action." Conn. Gen. Stat. § 42-110g(a). "To determine whether a business practice violates CUTPA, Connecticut courts follow the … cigarette rule[.]" *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, 531 F. Supp. 2d 226, 232 (D. Conn. 2007). The factors weighed under the cigarette rule are:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Fabri v. United Technologies Int'l, Inc.*, 387 F.3d 109, 119-20 (2d Cir. 2004) (internal quotation marks and citation omitted).

Apart from the lack of any statutory violations upon which to support a violation of CUTPA, the Sixth Count also fails to assert well-pleaded, material allegations which would give rise to a violation of CUTPA. The Sixth Count only consists of unwarranted deductions of fact and facts couched as legal conclusions, which should not be admitted on this motion to dismiss.

For example, the Sixth Count alleges that an improper "repossession," a "threat to repossess" the vehicle, or a "constructive repossession" of the Vehicle has occurred. *See* Am.

---

[7]   Plaintiff's counsel's "cookie cutter" approach to his dozens of annual consumer complaints against auto dealerships which results in false allegations should not be tolerated by the Court.

Compl., Sixth Count ¶¶ 51, 54, 67, 68(b). Indeed, there is no allegation that Suburban Subaru was ever in possession of the Vehicle, or interfered with the Plaintiff's use, after Plaintiff "took delivery of the Vehicle." *Id.* ¶ 26. [8] Nor are there any grounds to assert that Plaintiff was entitled to the vehicle once he was denied financing. Averments to repossession are not only misrepresentations of Plaintiff's own recitation of the facts but are also categorically unsupported by the Amended Complaint.

The Sixth Count also uses the term "improper demand" to refer to a litany of actions taken by Suburban Subaru which Plaintiff, again in conclusory fashion, asserts provide a basis for his CUTPA claim, as they are "unfair, immoral, unethical, oppressive, and unscrupulous as such to cause substantial injury to consumers." *See* Am. Compl., Sixth Count ¶¶ 68(a),(b),(d)-(f),(h), 69. However, there are no material allegations to support a conclusion as to why Plaintiff's conduct was "improper" or offensive to some public policy. To put it another way, there is no standard or public policy upon which to evaluate Suburban Subaru's allegedly "improper" conduct except for Plaintiff's own opinions that the conduct was improper. Simply adding an adjective to an allegation is not enough to meet the standards required for pleading a violation of CUTPA. *See e.g. White v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1676 (VAB), 2019 WL 3334533 (D. Conn. July 25, 2019) ("Here, the Complaint fails to allege on its face a claim under the CUTPA. … [Plaintiff] has not articulated how [Defendant]'s practices offend public policy, how its conduct was immoral, unethical, oppressive, or unscrupulous, or whether there had been substantial injury to consumers. … [Plaintiff] has only provided threadbare assertions of perceived wrongdoings that only amount to legal conclusions … And she has not shown how [Defendant's] denying this loan modification violates Connecticut public policy.").

---

[8] This is another example of Plaintiff's counsel's "cookie cutter" approach to his dozens of annual consumer complaints against auto dealerships which results in false allegations which should not be tolerated by the Court.

For these reasons, the Sixth Count should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### III.    CONCLUSION

For these reasons, the Court should dismiss the First, Second, Third, Fourth, Fifth and Sixth Counts of the Complaint.

Respectfully submitted,

DEFENDANT,
SUBURBAN SUBARU, INC.

By: _/s/ Joshua A. Hawks-Ladds_____
      Joshua A. Hawks-Ladds (ct09446)
      Jhawks-ladds@pullcom.com
      Pullman & Comley, LLC
      90 State House Square
      Hartford, CT 06103
      Tel. (860) 541-3306
      Tel. (860) 424-4372
      Fax (860) 424-4370

### CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

_/s/ Joshua A. Hawks-Ladds_____
Joshua A. Hawks-Ladds

ACTIVE/83385.2/BLOGIURATO/10618949v3