UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PABLO CASTELLANOS-HERNANDEZ )<br>    Plaintiff                              )<br>                                        )<br>v.                                           )<br>                                        )<br>SUBURBAN SUBARU, INC.          )<br>    Defendant                           )<br>_____ ) | CIVIL ACTION NO.<br>3:22-CV-00728-OAW<br><br><br><br><br><br><br>SEPTEMBER 27, 2023 |

## **AMENDED COMPLAINT**

### I.    INTRODUCTION

1.    This is a suit by a consumer under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, the Connecticut Retail Installment Sales Financing Act ("RISFA"), the Uniform Commercial Code ("UCC"), and the Connecticut Unfair Trade Practices Act ("CUTPA") in connection with a "yo-yo" sale by the defendant Suburban Subaru, Inc.

### II.  PARTIES

2.    Plaintiff, Pablo Castellanos-Hernandez ("Plaintiff"), is a consumer residing in East Granby, Connecticut.

3.    Suburban Subaru, Inc. is a Connecticut corporation with a principal place of business in Vernon, Connecticut.

### III.  JURISDICTION

4.    Jurisdiction in this Court is proper pursuant to U.S.C. § 1691e(f), 15 U.S.C. § 1640(e), 15 28 U.S.C. §§ 1331, 1367, and Fed. R. Civ. P. 18(a).

5.      This Court has jurisdiction over Suburban Subaru because it is a Connecticut corporation and conducts business in this state.

6.      Venue in this Court is proper because the acts complained of occurred in this state.

## IV.    FACTUAL ALLEGATIONS

7.      Suburban Subaru, as part of its regular business practice, sells motor vehicles to consumers who require financing.

8.      Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and deliver the loan proceeds to Suburban Subaru, who would treat the transaction in much the same fashion as a cash purchase. Alternatively, consumers can finance their purchases by entering into retail installment contracts directly with Suburban Subaru.

9.      Suburban Subaru generally does not retain possession of the retail installment contracts, but instead it assigns the retail installment contracts to third party banks or finance companies, who pay Suburban Subaru in return for the assignment.

10.     Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Suburban Subaru will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

11.     Occasionally, Suburban Subaru is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

12. In some instances, in order to avoid losing the sale, Suburban Subaru will provide a consumer with a retail installment contract in the hope that it will subsequently assign the contract to a finance company.

13. In other instances, finance companies agree to accept assignment of a retail installment contract subject to certain conditions.

14. Under either situation, Suburban Subaru has a general business practice of seeking to bind consumers to the transaction by having them execute retail installment contracts even though it does not intend to honor the contract if it is unable to assign it to a third party.

15. On or about October 19, 2021, Plaintiff went to Suburban Subaru to look at vehicles.

16. Plaintiff told Suburban Subaru that he wished to finance a portion of the cost of a vehicle, and he provided Suburban Subaru with information and documentation regarding his income.

17. On information and belief, Plaintiff submitted a completed credit application that triggered notification requirements under the ECOA.

18. Although Plaintiff was married, he did not wish to submit a joint credit application for his spouse and intended for any vehicle that he purchased to be titled and registered to him alone.

19. Plaintiff was not relying upon any income of his spouse to make payments for any vehicle that he purchased.

20. Plaintiff agreed to purchase a 2020 Subaru Legacy for a cash price of $34,317.44, including taxes, fees, and various associated services.

21. Plaintiff paid a cash down payment of $3,750 to Suburban Subaru, and he traded in a 2011 Subaru Legacy for which he received a trade-in allowance of $1,000.

22. Plaintiff financed the balance of $29,567.44 pursuant to a retail installment contract (the "First Contract").

23. The First Contract listed Plaintiff as the Buyer, and Suburban Subaru as the Seller-Creditor.

24. Plaintiff became obligated to proceed with the transaction upon his execution of the First Contract.

25. The First Contract failed to disclose the annual percentage rate as an estimate, even though Suburban Subaru did not intend for credit to commence until after it had assigned the First Contract to COAF.

26. Soon after Plaintiff took delivery of the Vehicle, Suburban Subaru contacted him and stated that it needed additional information regarding his credit application, which Plaintiff provided.

27. The First Contract included a provision contemplating an assignment from Suburban Subaru to COAF, although this provision was not set forth in the First Contract as creating either a condition precedent or condition subsequent that would render the First Contract as invalid between Plaintiff and Suburban Subaru in the event that no assignment was made.

28. Upon information and belief, COAF declined to accept assignment of the First Contract or it accepted assignment and reassigned the First Contract back to Suburban Subaru shortly thereafter.

29. If COAF had never agreed to accept assignment, or if it placed conditions on the acceptance of assignment that had not been satisfied, and if Suburban Subaru did not intend to honor the First Contract as the seller/creditor, then it was prohibited from selling the Vehicle to Plaintiff by Conn. Gen. Stat. § 14-62(h).

30. Several weeks later, Suburban Subaru called Plaintiff and told him his credit application had not been approved by COAF and that if he wanted to retain the Vehicle, he would be required to submit a new credit application with his spouse as co-signer.

31. Notably, Suburban Subaru did not state that Plaintiff could secure any co-signer but specified that the co-signer needed to be his spouse on the purported grounds that she was a joint account holder on Plaintiff's bank account.

32. Plaintiff was ready, willing and able to make payments under the First Contract, and he offered to do so, but Suburban Subaru refused to accept payment.

33. Not wishing to lose the Vehicle, Plaintiff and his spouse submitted a joint credit application.

34. On information and belief, Suburban Subaru submitted Plaintiff's credit application relating to the Second Contract to COAF and Santander Consumer, USA, who both accessed Plaintiff's credit report.

35. COAF made a hard inquiry of Plaintiff's credit on or about November 30, 2021.

36. Santander made a hard inquiry of Plaintiff's credit on or about November 30, 2021.

37. As a result of COAF and Santander's credit inquiries, Plaintiff's credit score dropped by approximately 90 points.

38. Suburban Subaru told Plaintiff that the new application was approved and that he was required to pay an additional $1,000 as a down payment.

39. Suburban Subaru prepared a second retail installment contract (the "Second Contract") that listed Plaintiff as the Buyer, his spouse as a Co-Buyer, and Suburban Subaru as the Seller-Creditor.

40. The Second Contract included a charge of $895 for a GAP Addendum.

41. Before signing the Second Contract, Plaintiff requested that Suburban Subaru remove the GAP Addendum.

42. Suburban Subaru responded that the credit application would probably not be approved unless the GAP was included and that, even if it was approved, the annual percentage rate of interest would increase, eliminating any savings that Plaintiff would obtain by not purchasing the GAP.

43. In light of his inability to finance the Vehicle for the offered rate without purchasing GAP, Plaintiff accepted GAP and executed the Second Contract.

44. The Second Contract was assigned by Suburban Subaru to COAF.

45. Plaintiff canceled the GAP addendum and has received or will receive a partial refund of the cost, but in the meantime, he incurred finance charges on the account balance, which included the $895 charge for the GAP addendum.

## V. CAUSES OF ACTION

**FIRST COUNT:    ECOA**

46. Suburban Subaru regularly extended credit to consumers by entering into retail installment contracts for the purchase of motor vehicles, and it is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e).

47. On information and belief, Suburban Subaru acted on more than one hundred and fifty credit applications in the year prior to this transaction and is not permitted to provide verbal notices of adverse action under 15 U.S.C. § 1691(d)(5).

48. Suburban Subaru violated ECOA by discriminating against Plaintiff on account of his marital status by asking Plaintiff for his spouse's credit information and by requiring that his spouse, to the exclusion of other potential co-signers, be a co-buyer for the Vehicle.

49. Suburban Subaru is liable to Plaintiff pursuant to ECOA, 15 U.S.C. § 1691e, for his damages, punitive damages of up to $10,000, plus a reasonable attorney's fee.

**SECOND COUNT: RETAIL INSTALLMENT SALES FINANCING ACT**

50. Suburban Subaru informed Plaintiff that he was not permitted to retain possession of the Vehicle pursuant to the First Contract, and its requirement that he execute the Second Contract constituted an exercise of dominion and control over the Vehicle that constituted a constructive repossession for purposes of RISFA.

51. Suburban Subaru did not send Plaintiff the notice required to be given under Conn. Gen. Stat. § 36a-785(c).

52. Suburban Subaru is liable to Plaintiff for statutory damages of 25% of the amount paid under the First Contract, or $1,187 pursuant to Conn. Gen. Stat. § 36a-785(i).

### THIRD COUNT: UNIFORM COMMERCIAL CODE

53. Suburban Subaru informed Plaintiff that he was not permitted to retain possession of the Vehicle pursuant to the First Contract, and its requirement that he execute the Second Contract constituted an exercise of dominion and control over the Vehicle that constituted a constructive repossession for purposes of Article 9 of the UCC.

54. Suburban Subaru violated the UCC by repossessing the Vehicle when Plaintiff was not in default and when it had no right to do in violation of Conn. Gen. Stat. § 42a-9-609.

55. Pursuant to Conn. Gen. Stat. § 42a-9-625, Suburban Subaru is liable to Plaintiff for the greater of his actual damages or an amount equal to the finance charge plus ten percent of the principal amount of the amount financed as shown on the First Contract, or $20,812.

### FOURTH COUNT: TRUTH IN LENDING ACT (FIRST CONTRACT)

56. At the time Suburban Subaru entered into the First Contract with Plaintiff, it knew or should have known that it did not have a firm commitment from COAF.

57. The proffered Annual Percentage Rate ("APR") was an estimate, and it was treated by Suburban Subaru as an estimate, regarding the terms of the credit that it might provide to Plaintiff, because the date that the credit would actually be extended as

delineated by the transfer of title to Plaintiff, was unknown at the time that Suburban Subaru provided the disclosures in the first transaction.

58. Through its failure to disclose the APR as an estimate on the First Contract, Suburban Subaru violated TILA by way of Regulation Z § 226.17(c)(2).

59. Suburban Subaru is liable to Plaintiff for statutory damages of double the finance charge, capped at $2,000, and attorney's fees and costs.

### FIFTH COUNT: TRUTH IN LENDING ACT (SECOND CONTRACT)

60. By telling Plaintiff he would be required to pay a higher APR if he did not purchase the GAP addendum or that he might not be approved for financing, Suburban Subaru conditioned the APR on the purchase of the GAP.

61. Consequently, GAP was not optional but was a mandatory condition of the extension of credit at the lower rate of interest.

62. The cost of GAP was not included as part of the finance charge in the disclosures in the Second Contract but was instead incorporated as part of the amount financed, even though it was ineligible for exclusion from the finance charge under 15 U.S.C. § 1605(b)(1) and Reg. Z § 1026.4(d)(1)(i).

63. Suburban Subaru violated TILA, 15 U.S.C. § 1638(d) by improperly including the cost of GAP as part of the amount financed and by not including it in the finance charge or in the calculation of the annual percentage rate of interest.

64. Suburban Subaru is liable to Plaintiff for statutory damages of double the finance charge, up to $2,000, and attorney's fees and costs pursuant to 15 U.S.C. § 1640.

## SIXTH COUNT: CONNECTICUT UNFAIR TRADE PRACTICES ACT

65. The allegations of the preceding counts are incorporated herein.

66. The actions of Suburban Subaru in representing to Plaintiff that he had been approved for financing, providing him with the First Contract which contained no condition precedent or condition subsequent to its being fully enforceable, delivering the Vehicle to Plaintiff, and then repossessing the Vehicle, and its other conduct as previously alleged, constituted unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*.

67. Suburban Subaru's acts in violation of CUTPA include the following:

   a. Its violations of ECOA, TILA, RISFA, and the UCC;

   b. Its refusal to honor the First Contract and its improper threat to repossess or its improper repossession of the Vehicle;

   c. Its release of the Vehicle to Plaintiff prior to the time that financing had been approved by the lending institution or other entity through which any financing agreement had been made, a *per se* violation of CUTPA pursuant to Conn. Gen. Stat. § 14-62(h) and Conn. Agency Reg. § 42-110b(28)(b)(23).

   d. Its improper demand that Plaintiff enter into a new contract or surrender the Vehicle;

   e. Its improper demand that Plaintiff pay an additional $1,000;

   f. Its improper demand that Plaintiff's spouse submit a credit application and co-sign for the Vehicle as a condition of Plaintiff's keeping the Vehicle;

      g.      Its tying of credit approval and the offered rate of interest to the purchase of the GAP addendum; and

      h.      Its improper requirement that a new credit application be submitted and its forwarding of the application to COAF and to Santander.

68.    Suburban Subaru's acts as described above were unfair, immoral, unethical, oppressive, and unscrupulous as such to cause substantial injury to consumers.

69.    The Plaintiff has sustained an ascertainable loss as a result of Suburban Subaru's acts because he was required to pay an additional down payment of $1,000, he lost a portion of the $895 cost of GAP, he has paid interest on the cost of the GAP, his credit score was diminished, and he was not able to finance and own the Vehicle without his spouse being a co-signer.

70.    Suburban Subaru is liable to Plaintiff for his actual damages, attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. § 42-110g.

WHEREFORE, the Plaintiff claims statutory damages, actual damages, punitive damages, attorney's fees and costs.

                PLAINTIFF, PABLO CASTELLANOS-HERNANDEZ

                By: /s/ *Daniel s. Blinn*
                     Daniel S. Blinn
                     dblinn@consumerlawgroup.com
                     Consumer Law Group, LLC
                     35 Cold Spring Rd. Suite 512
                     Rocky Hill, CT  06067
                     Tel. (860) 571-0408
                     Fax (860) 571-7457
                     Juris No. 414047

## CERTIFICATION

      I hereby certify that on September 27, 2023, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                              /s/ *Daniel S. Blinn*
                              Daniel S. Blinn