**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PABLO CASTELLANOS-HERNANDEZ, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Civil No. 3:22-CV-728 (OAW) |
| | : | |
| SUBURBAN SUBARU, INC., | : | |
| *Defendant.* | : | |

<u>**RULING**</u>

**THIS ACTION** is before the court upon Defendant's Renewed Motion to Dismiss (together with the memorandum in support thereof, the "Motion").[1]  *See* ECF Nos. 23–24. The court has reviewed the Motion, Plaintiff's opposition thereto, ECF No. 31, and the record in this matter and is fully apprised in the premises.  Defendant did not file a reply brief and the time in which to do so has expired.  For the reasons stated herein, the Motion is <u>**DENIED.**</u>

I.  <u>**BACKGROUND**[2]</u>

Plaintiff purchased a 2020 Subaru Legacy from Defendant in October 2021.  He traded in his old vehicle for a credit toward the purchase price, made a down payment of a few thousand dollars, and entered into a financing agreement with Defendant to cover

---

[1] Defendant filed a previous motion to dismiss that was mooted by Plaintiff's First Amended Complaint. Accordingly, the court denies the first motion to dismiss, ECF No. 12, as moot.  Plaintiff also filed a motion for entry of default because Defendant did not submit a third motion to dismiss after Plaintiff filed his Second Amended Complaint.  *See* ECF No. 47.  Because the Second Amended Complaint only dropped the allegations of one part of one count, and left the remainder of the First Amended Complaint untouched, the court finds that the Motion has not been mooted, except as to the one agreed-upon change to Count One.  Accordingly, Plaintiff's motion for default is denied.
[2] All factual allegations are taken from Plaintiff's Second Amended Complaint, which is the operative pleading.  *See generally* ECF No. 46.

1

the bulk of the purchase price, in which Defendant was listed as the seller and the creditor (the "First Contract").  This agreement contained "no condition precedent or condition subsequent to its being fully enforceable . . . ."  ECF No. 46 ¶ 66.  Plaintiff took delivery of the vehicle (presumably the same day the First Contract was executed, since he traded in his old vehicle, though the date is not specified in the complaint).

Defendant attempted to assign the financing agreement to another creditor, but that creditor declined to take over the loan under the terms to which Defendant had agreed.  So Defendant contacted Plaintiff and initially told him that they needed additional information for his credit application (which, per the complaint, already had been accepted at this point).  Thereafter, they told him that he could retain the car (which already was in Plaintiff's possession) only if he entered into a new financing agreement (the "Second Contract"), and if his wife signed as a co-buyer.  Plaintiff offered to perform under the First Contract, but Defendant refused to do the same, so Plaintiff, afraid that the vehicle would be repossessed (and having traded in his old car already), begrudgingly agreed.  Defendant required Plaintiff to make an additional down payment of $1,000 and included gap insurance in the Second Contract, to which Plaintiff objected, but absent which Defendant said the second credit application probably would not be accepted.  Again begrudgingly, Plaintiff assented to the gap insurance.

## II.  <u>LEGAL STANDARD</u>

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.*  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

###   III.   DISCUSSION

In brief, Plaintiff alleges that one of two things happened in the course of his dealings with Defendant: either Defendant in the First Contract entered into an unconditional credit agreement with Plaintiff, in which case its refusal to honor the agreement and its insistence upon execution of the Second Contract amounted to a repossession of the vehicle triggering certain procedural requirements under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., the Connecticut Retail Installment Sales Financing Act ("RISFA"), and the Uniform Commercial Code ("UCC"), none of which Defendant satisfied; or, the First Contract was conditioned upon Defendant being able to assign it to another party, which condition triggered other procedural requirements of

TILA, which Defendant failed to satisfy.[3]  In either case, Plaintiff asserts that Defendant violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA").  The court takes each claim seriatim.

## A.  Count One: ECOA

Congress's primary purpose in enacting the ECOA in 1974 was to "eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Mays v. Buckeye Rural Elec. Coop.*, 277 F.3d 873, 876 (6th Cir.2002).  Its protections came to span a number of protected attributes (including race, color, religion, and sex), but relevant here, it prohibits creditors from discriminating against credit applicants on the basis of marital status, and more particularly, it forbids creditors from requiring a spouse to co-sign an application.  15 U.S.C. §§ 1691(a)(1); 12 C.F.R. § 202.7(d)(1).

Plaintiff alleges that Defendant discriminated against him based on his marital status by requiring his wife to co-sign for the vehicle.[4]  Defendant argues, though, that these allegations fail to state a claim because (1) Plaintiff's wife was required to co-sign for the vehicle because she jointly owned the bank account he listed on his credit application, which is permitted by ECOA, and (2) the request for his wife's signature postdated the determination that Plaintiff was not individually creditworthy, so ECOA protections did not attach.

The court easily rejects the latter argument, since Plaintiff's clear allegation is that he *was* deemed creditworthy by Defendant before the third-party creditor disagreed.  And

---

[3] The court notes that neither party has provided either contract.
[4] Plaintiff originally also asserted an ECOA claim for failure to comply with ECOA notice provisions, but he has dropped that claim in his Second Amended Complaint.  See ECF Nos. 45 and 46.

even if Plaintiff had not so alleged, this argument does not explain why Plaintiff's spouse specifically, and not any creditworthy individual, was required to co-sign.

With respect to the former argument, the court acknowledges that the ECOA excepts certain circumstances from the general prohibition against requiring a spouse to co-sign for a loan.  15 U.S.C. § 1691d(a) ("A request for the signature of both parties to a marriage for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings, shall not constitute discrimination under this subchapter. . . .").  But regulations enforcing the Act explicitly narrow this exception such that a creditor may only require a spouse to execute those documents necessary to permit the creditor to seize the joint asset.  12 C.F.R. § 202.7 (d)(2) and (d)(4) (stating in both secured and unsecured credit transactions, the creditor may require the signature of an applicant's spouse on any instrument reasonably believed to be necessary to enable the creditor to reach the security or property relied upon, respectively).  It is not clear, in the first instance, whether the contents of the joint bank account were being offered as security.  Moreover, it is not clear that Plaintiff's wife had to become a co-buyer in order for her interest in the bank account to be forfeitable in the event of a default.

Defendant asserts that this case is identical to *Riggs Nat. Bank of Washington, D.C. v. Linch*, 829 F. Supp. 163 (E.D. Va. 1993), aff'd, 36 F.3d 370 (4th Cir. 1994), in which an ECOA claim based on similar facts was dismissed.  *Riggs* dealt with an individual who was sought a multimillion-dollar loan in order to invest in a real estate venture, and who was only deemed individually creditworthy by dint of his purported ownership in a parcel  of property itself worth over one million dollars.  Before closing the loan, though, the bank learned that the parcel was jointly held with the applicant's wife,

5

and so the bank required execution of a guaranty by the wife as co-owner of the parcel. The court determined that because the applicant was not individually creditworthy, ECOA protections did not attach in the first instance.

The court finds *Riggs* distinguishable in important respects. Notably, the bank had not finalized the loan when it discovered the discrepancy in the application materials, whereas here Defendant had approved Plaintiff's application already. And the *Riggs* applicant's net worth without the parcel was such a small a fraction of what it was with the parcel that ownership thereof was dispositive of whether the applicant would be approved for the loan. There is no indication that Plaintiff's joint bank account was the determinative factor in Plaintiff's creditworthiness, and the alleged fact that Defendant did finalize the terms of Plaintiff's loan without his wife's signature indicates that the bank account was not the dispositive factor in determining Plaintiff's creditworthiness. This case therefore is not identical to *Riggs*. And even if it were, it still would be unclear why Plaintiff's wife was not asked simply to execute whatever documents necessary to allow Defendant access to the account in the event of a default.

Accordingly, the court concludes that Plaintiff has stated his ECOA claim.

### B.  Count Two: RISFA

Connecticut law dictates how a creditor may repossess property when a debtor has defaulted on a loan. Defendant argues that RIFSA is inapplicable because there was no repossession of Plaintiff's vehicle.[5]  Plaintiff argues that by telling him he could not retain the vehicle unless he submitted a new credit application jointly with his wife,

---

[5] Defendant also argues that there was no violation of RIFSA's notice and redemption requirements, but these arguments are subsidiary to the principal argument that there was no repossession that would trigger those provisions. Because the court finds persuasive Plaintiff's counterargument that there was a repossession, the court need not address the subsidiary arguments.

Defendant constructively repossessed the vehicle, thereby triggering the requirements of RIFSA.

Plaintiff points out that at least one Connecticut court has accepted that, in certain circumstances, a creditor may repossess property without taking physical possession of it. *See Van Wormer v. Charter Oak Fed. Credit Union*, No. 114865, 2000 WL 1281530 (Conn. Super. Ct. Aug. 25, 2000) (Hon. Thomas J. Corradino, J.). More specifically, the court found that "the notice provision [of RIFSA] should be automatically applied whenever the creditor takes steps consistent with the exercise of dominion or control of secured property." *Id.* at *3. *Van Wormer* is an unpublished opinion, but it deals with facts similar, though not identical, to those presented here: a debtor who was not in monetary default but whose creditor nonetheless acted "consistent with a claim of control over the car." *Id.* The court is persuaded by Plaintiff's argument that Defendant acted as though it had a claim of control over the car when it told Plaintiff he would not be permitted to retain it under the terms of the First Contract. To renegotiate the financing terms, Defendant must have had a possessory interest in the vehicle, which would have required some sort of repossession between the delivery of the vehicle and the execution of the Second Contract. Indeed, it is not clear how the Second Contract could be enforceable if Defendant had no possessory interest in the car. And the court posits that it would be antithetical to RIFSA's remedial purpose to find that the statute grants more protection to a debtor who has defaulted than one who has not.

At this early stage of litigation, the court finds that Plaintiff has alleged sufficient facts to support his RIFSA claim. Thus, the Motion is denied with respect to Count Two.

### C.  Count Three: UCC

Plaintiff deploys this constructive repossession theory to support his UCC claim as well.  While it is clear that the UCC permits a secured party[6] to take possession of collateral in the event of a default, Plaintiff alleges that he never defaulted on the First Contract, so Defendant's (constructive) repossession of the vehicle was unlawful.

Defendant again argues that there has been no repossession of the vehicle, which the court already has addressed supra and summarily rejects here.  Defendant also argues that Plaintiff had no entitlement to the vehicle because the third-party creditor did not agree to finance Plaintiff's purchase thereof, but the plain allegation of the complaint is that Plaintiff did have entitlement to the vehicle because *Defendant* agreed to finance his purchase of it.  Accordingly, the court rejects that argument as well.

For the same reasons as those stated in relation to Count Two, the court will allow this claim to proceed.  The Motion therefore is denied as to Count Three.

### D.  Counts Four and Five: TILA

Plaintiff's primary allegation is that enforceability of the First Contract was not conditioned upon Defendant being able to assign it to a third party. In Count Four, though, he argues in the alternative that if enforceability of the First Contract was contingent upon assignment, then Defendant failed to follow federal disclosure requirements for a conditional offer of credit.  Specifically, because Defendant could not have known what the final Annual Percentage Rate ("APR") would be on Plaintiff's loan, it was obligated to state the APR in the First Contract as an estimate, which it did not do.   Defendant does

---

[6] The court notes that it is not alleged with clarity in the complaint whether the purchase of the vehicle was a secured transaction, but such transactions generally are secured by the vehicle, so the court will accept that provisions governing secured transactions specifically apply here.

not raise any apposite argument to this allegation; instead, it asserts that because its calculation of the APR used the best information it had at the time of the sale, it satisfies TILA.  But this is a distinct requirement under the Act.  Plaintiff does not claim that the APR used in the First Contract was an inaccurate estimate, but rather that the APR was not presented to Plaintiff as an estimate in the first place.  There being no apposite argument to Count Four, the Motion must be denied as to this Count, too.

In Count Five, Plaintiff asserts that, per statute, the gap coverage included in the Second Contract should have been disclosed as part of the financing charge, but Defendant instead disclosed it as part of the total amount financed.  Defendant argues that the gap coverage was optional, and Plaintiff could have refused its inclusion in the Second Contract, so the coverage was disclosed properly.

Regulations implementing TILA permit gap coverage to be excluded from the financing charge if three criteria are satisfied: (1) such coverage is not required, and this fact is disclosed in writing; (2) the length of the term of coverage and the premium for the initial term of coverage is disclosed in writing; and (3) the consumer signs or initials an "affirmative written request" for such coverage after receiving these two disclosures.  12 C.F.R. § 226.4(d)(3).

It is not clear whether the second and third requirements are satisfied, but Plaintiff has alleged facts sufficient at the dismissal phase to show that even if they were, Defendant's verbal representations to Plaintiff showed that, whatever the Second Contract stated, in reality the gap coverage was mandatory.  *See Muñoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020) (finding, on a motion for reconsideration that a verbal representation that gap coverage

was mandatory entitled the plaintiff to damages on a TILA claim).  Specifically, Plaintiff alleges that Defendant made an offer of credit in the Second Contract that was contingent upon Plaintiff's acceptance of gap coverage.  When Plaintiff objected to the inclusion of gap coverage, and specifically asked for its removal, Defendant told him that his application probably would not be approved without it, and certainly not at the terms offered.  This factual allegation adequately supports this claim at this point in litigation.

Consequently, the court denies the Motion as to Count Five as well.

### E.  Count Six: CUTPA

Finally, Plaintiff asserts that Defendant's conduct violates CUTPA, which forbids any unfair or deceptive trade practices.  More specifically, Plaintiff argues (1) that any of the preceding claims could provide the basis for a CUTPA claim; (2) that Defendant's release of the vehicle to Plaintiff prior to there being a final financing arrangement in place is a per se violation of CUTPA; and (3) that any of the following actions also qualify as unfair or deceptive: (i) refusing to honor the First Contract, (ii) stating that Plaintiff, even absent any default, would not be permitted to retain the vehicle, (iii) demanding that Plaintiff enter into a new financing agreement or lose the vehicle, (iv) demanding an additional $1,000 down payment, (v) conditioning the interest rate in the Second Contract upon the  purchase of gap insurance, (vi) demanding that Plaintiff submit a new credit application, and (vii) forwarding the new credit application to third-party creditors.

#### 1. *Previous Counts*

Defendant first argues that a CUTPA claim cannot be based upon the ECOA or the UCC claims because the ECOA explicitly limits a plaintiff's recovery to either ECOA remedies or state law remedies (but not both), and because the UCC is federal law.  The

point regarding the ECOA is well-taken, *see* 15 U.S.C. § 1691d(e), but Defendant's supporting citation for its UCC argument clearly is inapposite.  Defendant relies on *Onwuka v. Citibank*, NA, No. 20-CV-6064 (LLS), 2020 WL 7321397, at *2 (S.D.N.Y. Dec. 3, 2020) to support its argument, but that case dealt with whether a federal court may exercise federal question jurisdiction over a UCC claim (which of course, it cannot, because UCC is not federal law).  This court clearly has jurisdiction over the UCC claim pursuant to pendant (or supplemental) jurisdiction (which Defendant acknowledged in the parties' Local Rule 26(f) Report, *see* ECF No. 17 at 2).  28 U.S.C. § 1367.  This argument therefore clearly is inapposite.

Defendant also states that TILA and RIFSA also cannot provide a basis for a CUTPA claim, but it makes no supporting argument whatsoever, and the court need not entertain conclusory arguments.  However, it is well-accepted that a TILA violation may also constitute a CUTPA violation.  *See, e.g., Cheshire Mortg. Service, Inc. v. Montes*, 223 Conn. 80, 113 (1992) (finding that a TILA violation also may constitute a CUTPA violation); *Conley v. 1008 Bank Street, LLC,* 2020 WL 4926599, at *15 (D. Conn. 2020); *Muñoz*, 2020 WL 6607789 at *3.  And RIFSA and UCC violations, while not per se violations of CUTPA, may yet allow for recovery under CUPTA where the violative conduct also qualifies as unfair or deceptive within the meaning of the statute.  *Jacobs v. Healey Ford-Subaru, Inc.*, 231 Conn. 707, 727 (1995) (evaluating "all the facts surrounding the defendant's noncompliance . . . in evaluating the threshold test for CUTPA recovery.").

This "threshold test" is known as the "cigarette rule," which courts use to determine whether a particular action violates CUTPA, and which asks

11

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers, competitors or other businesspersons.

*Cartagena-Cordero v. Five Star Cars, LLC*, No. 3:19-CV-1728 (SRU), 2020 WL 5912601, at *10 (D. Conn. Oct. 6, 2020), amended on reconsideration, 494 F. Supp. 3d 204 (D. Conn. 2020) (citing *Edmands v. CUNO, Inc.*, 277 Conn. 425, 450 n.16 (2006).  A court may find a particular action to be unfair or deceptive even if does not satisfy all three criteria, depending on the degree to which each factor is met.  *Locascio v. Imports Unlimited, Inc.*, 309 F. Supp. 2d 267, 271 (D. Conn. 2004).

Here, the alleged violations of RIFSA, TILA, and UCC clearly satisfy the first factor, as the violations thereof by definition offend statutes that reflect a public policy of protecting consumers.  And Plaintiff has alleged facts sufficient to show at this stage of litigation that the violative conduct is oppressive insofar as Defendant refused to perform under the terms of the First Contract, and Plaintiff, absent any default (or the protections that would inure to him in the case of a default) was made to enter into a new contract with less favorable terms, or to face the loss of his vehicle, which, per Plaintiff's constructive repossession theory, itself constituted a kind of loss.  Thus, the "substantial injury" also is satisfied.

Accordingly, the court finds that Count 6 may be based upon the claims alleged in Counts 2–5.

### 2. *Per se violation*

With respect to the alleged per se violation, Defendant argues that the Connecticut legislature made violations of a number of statutes per se violations of CUTPA, but not the statute prohibiting delivery of a used vehicle[7] prior to finalization of financing terms. *See* Conn. Gen. Stat. § 14-62(h).  However, Plaintiff responds that CUTPA regulations state that any violation of state law concerning the sale of motor vehicles is a per se unfair act within the meaning of the statute.  *See* Conn. Agency Reg. § 42-110b-28(b)(23).[8] Defendant seems to argue that this regulation is inapplicable to anything except the advertising of motor vehicles, noting that the regulation has a specific "Scope" section, which states that "[t]he following advertising regulations shall apply to any advertisement published, delivered, broadcast or circulated within the State of Connecticut . . . ."  Conn. Agency Reg. § 42-110b-28(b).  But it is not clear that this statement is intended to narrow the applicability of the subparagraph Plaintiff cites to, which is drafted very broadly to render a violation of *any* law governing the *sale* of motor vehicles a per se violation of CUTPA.  Conn. Agency Reg. § 42-110b-28(b)(23).  Moreover, the regulation itself is titled "Standards for the advertising *and selling* of motor vehicles within Connecticut."  Conn. Agency Reg. § 42-110b-28 (emphasis added).   Subparagraph (a) only contains definitions, and if the stated "scope" applies to all the regulation in subparagraph (b), then no part of the regulation would govern sales.   Put differently, to accept Defendant's argument would read any governance of car sales out of the regulation entirely.  But there

---

[7] The court notes that it is not alleged with clarity in the complaint that the vehicle at issue was used. However, Defendant does not argue this as a basis for dismissal.

[8] The court notes that this regulation would appear to render any of the previous Counts per se violations of CUTPA, but that is not how the complaint is drafted, and neither brief adopts that theory, so the court will not address this apparent issue.

are several provisions in the regulation that clearly do not apply only to advertisements, such as subparagraph (b)(24), which prohibits any misrepresentation of the source from which a car dealer purchased a motor vehicle.  In sum, Defendant has failed to persuade the court that its interpretation of the regulation is the correct one.

Accordingly, the court finds that Plaintiff's CUTPA claim can proceed on this alleged per se violation as well.

### 3.  *Enumerated violations*

Finally, Defendant argues that despite Plaintiff's word choice in his complaint, nothing was improper about its conduct in the transaction.  Much of its argument centers on its position that there was no repossession of the car, which already has been rejected and need not be addressed again here.  Otherwise, Defendant argues that there is "no standard or public policy upon which to evaluate [Defendant's] allegedly 'improper' conduct except for Plaintiff's own opinions that the conduct was improper."  ECF No. 23 at 21.  This statement completely ignores the cigarette test, though, despite the fact that it immediately follows Defendant's recitation of its factors.  Therefore, the court must, without the benefit of any argument from Defendant, apply the test to the facts alleged.

In so doing, the court finds that all of the actions listed in Count Six of the complaint offend the bedrock tenets of contracts (such as the fundamental principle that parties are free to enter into legally-enforceable agreements, and that once they have done so, they are bound by the agreed-upon terms) and the concern legislatures display for protecting consumers, specifically (as evidenced by the consumer protection laws themselves). Specifically, Defendant's actions ran afoul of both contract principles and consumer protections by entering into an agreement with Plaintiff, (who, as a consumer, is less

sophisticated than Defendant and has less bargaining power), then (1) refusing to honor that agreement when it became clear that, through no fault of Plaintiff, Defendant would not be able to assign the agreement to a third party, (2) inducing Plaintiff to submit a new credit application (after his first already was accepted) and enter into a second financing agreement (although the first already was fully enforceable) by telling him that, absent any default on his part, the car would be subject to repossession, (3) making the terms of the second agreement more onerous for Plaintiff through the requirement that he make an additional down payment and the inclusion of gap insurance and (4) sending the second application to third parties although Defendant already had accepted the first application.  Moreover, Plaintiff adequately has alleged substantial injury insofar as he was induced to enter into a less favorable financing agreement or risk losing his vehicle (which injury will be felt with every monthly payment), and he also suffered a blow to his credit score through the distribution to third parties of his second credit application.  Thus, the court concludes that Plaintiff has alleged sufficient facts to show at this point that all these enumerated actions satisfy the cigarette test.

Accordingly, Count Six is dismissed only insofar as it purports to base its CUTPA claim upon the ECOA violation.

## IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

> **A.** The Motion is **DENIED** except that Count Six may not be predicated
>
> upon the alleged ECOA violation.

**B.** The parties are instructed to submit a status report on or before **April 29, 2024,** that proposes a new schedule to govern the remainder of this litigation, and that indicates whether the parties would like to be referred to a United States Magistrate Judge for a settlement conference.

**IT IS SO ORDERED** at Hartford, Connecticut, this 29th day of March, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE